81 N.J. Super. 564 (1963)
196 A.2d 270
MOUNTAIN SPRINGS ASSOCIATION OF NEW JERSEY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT R. WILSON ET AL, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 27, 1963.
*567 Mr. Reginald F. Hopkinson for plaintiff (Messrs. Hofstra & Hofstra, attorneys).
Mr. Lawrence T. Isenberg for defendants Robert R. Wilson, Alfred DiSalvo, Phyllis DiSalvo, Russell Valentine, Katherine Valentine, L. Lewis, R. Dawson, Bernard Dawson and W.D. Livingston (Messrs. Isenberg & Isenberg, attorneys).
Mr. John G. D'Angelo for defendant Dagfin Dorph.
COLLESTER, J.S.C.
Plaintiff Mountain Springs Association of New Jersey, Inc., a nonprofit corporation of this State, brings this action for a construction and determination of the rights and liabilities of the parties under certain convenants *568 and restrictions contained in deeds of property in a 53-acre area known as "Mountain Springs," located in West Milford Township.
The area was acquired by Mountain Springs, Inc., a New Jersey corporation, in July 1924 for the purpose of developing a summer residential lake community. A two-acre lake was located in the tract, and Mountain Springs, Inc. laid out on maps, approved by the township and filed with the Register of Deeds for Passaic County, building lots, private roads and areas around the lake for use by property owners.
In order to assure the proper development of the area as a residential community and to provide utilities, including the development and maintenance of roads, of water supply, the upkeep and maintenance of the lake and other facilities for property owners, Mountain Springs, Inc. did two things. It caused to be formed an unincorporated association of property owners, known as Mountain Springs Association, which was to maintain such facilities and, secondly, all deeds to purchasers of lots in the area contained certain covenants, restrictions and reservations.
The granting clause in each deed to a purchaser recited that the grantor sold and conveyed the property "upon the covenants and with the restrictions and reservations hereinafter set forth." Following a recital of the description of the property conveyed by the deed were these pertinent provisions:
"1. Except the following covenants and restrictions, all of which shall run with the land, namely:
a. Neither said premises nor any building now or hereafter placed upon said premises shall be used for any manufacturing or mercantile purpose, or for any business or trade whatsoever, or for stabling of cows or other cattle, or for the housing of fowl.
b. No building shall be erected on the said premises, except one-family private dwellings, and a suitable stable or garage for private use only for each family.
c. No building of any kind shall be erected on the said premises nearer than 10 feet from any boundary line of the premises, except the rear line, nor nearer than 10 feet from any trail, road or pathway. This restriction, however, shall not cover verandas, porches or steps at either front or rear line.
*569 d. No excavation shall be made on the premises except for the purpose of building thereon, and at the time when building operations are commenced, and no earth or sand shall be removed from the said premises except as part of such excavation.
e. No dwelling or other building shall be erected or occupied on the premises without a cesspool, septic tank and an improved type of chemical toilet, which will meet the requirements of the State Department of Health for the disposal of sewerage from such dwelling. No out-house, toilet or privy shall be erected on the said land, except attached to or as part of the dwelling.
f. The right to run telephone and telegraph lines and poles over, on or under the land hereinbefore described, for the benefit of owners of land at Mountain Springs is reserved by the grantor for itself, its successors and assigns.
g. The right to run water lines or pipes, gas lines or pipes, sewer lines or pipes, in, or under the land hereinbefore described, for the benefit of owners of land at Mountain Springs is reserved by the grantor for itself, its successors and assigns.
h. It is the intent and purpose of this instrument to convey to the grantee, in common with all other purchasers or owners of land at Mountain Springs the use of the lake and stream for boating, bathing, fishing, etc.
i. Whereas, the party of the second part has induced the party of the first part to sell and convey the aforesaid premises, with the promise on the part of the party of the second part to the party of the first part, that the party of the second part will not sell, rent or lease the aforesaid premises or any building thereon, except to a member of the Mountain Springs Association or build or construct or cause to be built or constructed, any building or buildings on the aforesaid premises within a period of three (3) years, without the consent in writing of the party of the first part or its successors and assigns, and the party of the second part has agreed to waive any right or rights which he has or ought to have (a) to sell, rent or lease the said land except as aforesaid, or (b) to build or cause to be constructed thereon any building or buildings, without the consent in writing of the party of the first part or its successors and assigns.
These covenants and restrictions and reservations shall run with the land, but in the event of the Mountain Springs Association disbanding or dissolving or ceasing to be in existence after a period of three (3) years, the party of the second part shall come into his full right or rights without restrictions as to selling, renting or leasing said lands or buildings thereon. Said three-year period to date from July 2nd 1924."
The habendum clause of each deed contained a provision that it was "subject to the covenants, restrictions and reservations hereinbefore set forth."
*570 The Mountain Springs Association assessed dues against each member which were used to repair roads, provide a central well water system, supervision of the lake, to provide recreation facilities and the like. Dues varied from $10 to $30 per year.
On November 15, 1934 the unincorporated association became incorporated as a corporation not for pecuniary profit under the name of Mountain Springs Association of New Jersey, Inc. (the plaintiff in this action, hereinafter referred to as the Association). On January 15, 1937 Mountain Springs, Inc. conveyed all of its remaining unsold land in the area to plaintiff.
Alma Boyd (named as a defendant in this action but never served with process) purchased several tracts of land in the development from Mountain Springs, Inc. on August 18, 1928. The deed contained the covenants, restrictions and reservations set forth above. On April 13, 1955 Mrs. Boyd and her husband conveyed part of her property to Russell Valentine "subject to restrictions of record." Valentine constructed several cabins on the property and resold part of the tract to defendants Robert R. Wilson, Alfred and Phyllis DiSalvo, W.D. Livingston, L. Lewis, R. Dawson and Bernard Dawson (hereinafter referred to as the Valentine group). These defendants have constructed homes on said property and are year-round residents as distinguished from members of the Association, who are only summer residents.
We divert momentarily to get to the nub of the real controversy between the parties. The Valentine group who live in the area all year have their own methods of garbage disposal and have constructed their own wells to provide themselves with water. The summer residents provide a garbage collection service and have established a water distribution system from a main well through water pipes laid on top of the ground. These utilities are paid for by the Association. Such facilities are unavailable to residents except during the summer season.
*571 The Valentine group offered to join the Association provided they were not assessed for garbage collection and water distribution which the Association provided during the summer. The offer was refused. As a result these defendants have refused to join the Association.
It is plaintiff's contention that under the provisions in defendants' deeds they must join the Association and that Alma Boyd violated such provisions when she sold part of her property to Valentine.

1.
Defendants contend that the plaintiff did not succeed to the rights, powers and privileges of the unincorporated Mountain Springs Association. They argue that when the plaintiff corporation was formed on November 15, 1934 the members of the unincorporated association did not comply with the statutory requirements of R.S. 15:1-12 pertaining to the incorporation of an unincorporated association. In my view, this contention is without merit since the record indicates that all members of the unincorporated association signed the new certificate of incorporation. In such a case I do not believe that strict compliance with R.S. 15:1-12 is required. I am satisfied that the corporation now stands in the shoes of the unincorporated association.

2.
Paragraphs (a) through (e) above quoted are restrictions on the grantee in the deed which confine buildings erected on the property to one-family houses, require setbacks from roads and side lines, bar excavation except for construction purposes, and require cesspools or septic tanks. Paragraphs (f) and (g) are reservations in the grantor of easements for telephone and telegraph lines and water and sewer lines.
In paragraph (h) the grantor conveyed to the grantee a right, in common with other property owners, to use the lake and stream for "boating, bathing, fishing, etc." *572 The grant of the right to bathe and boat is a pure easement; the right to fish is a profit a prendre held as an appurtenance to the land conveyed. Upper Greenwood Lake, etc., Ass'n v. Grozing, 6 N.J. Super. 538 (Ch. Div. 1949); Mitchell v. D'Olier, 68 N.J.L. 375 (E. & A. 1902).
The controversy in the instant case concerns paragraph (i) and the unnumbered paragraph which follows. Under these paragraphs the grantee promised not to sell, rent or lease the property acquired except to a member of the Mountain Springs Association. This restraint upon alienation constitutes a covenant by the grantee. It is obvious that the intention of the original grantor and grantee, to restrict sales to members of the Association, was to be binding on grantee's successors in title. If valid, it would bind defendants in the instant case despite omission of the words "heirs, successors or assigns," or their equivalent. Javna v. D.J. Fredricks, Inc., 41 N.J. Super. 353, 359 (App. Div. 1956).
The core question is whether the covenant is valid or invalid. Plaintiff concedes that there is substantial authority that such covenant is repugnant to the fee conveyed and therefore invalid. In Lauderbaugh v. Williams, 409 Pa. 351, 186 A.2d 39 (Sup. Ct. 1962), the court held an agreement between a developer and property owners, which required future purchasers of lots in the development to become members of a property owners' association, as a condition precedent to a purchase, was invalid as unreasonably limiting free alienation of land. In Wayne Lakes Park v. Warner, 104 Ohio App. 167, 147 N.E.2d 269 (Ct. App. 1957), the court denied injunctive relief to a grantor where the deed contained a provision that the grantee shall at all times maintain annual membership in a property owners' association operated by the grantor.
Plaintiff cites as authority for its position Neponsit Property Owners' Ass'n, Inc. v. Emigrant Industrial Sav. Bank, 278 N.Y. 248, 15 N.E.2d 793, 118 A.L.R. 973 (Ct. App. 1938), where the court upheld a covenant whereunder the grantee agreed to pay a limited amount of money annually *573 to a property owners' association, to be used for the cost of maintenance of roads, parks, beach, sewer and other public purposes in the development. In Neponsit the covenant was to run with the land for a period of approximately 23 years.
The facts in the present case are clearly distinguished from Neponsit. Here the covenant did not provide that the grantee would contribute money for the maintenance of the roads, lake or other facilities. Neither did it require the property owner to maintain a membership in the property owners' association, as in Wayne Lakes Park, supra. The facts are closer to those we find in Lauderbaugh, supra.
The covenant in the case sub judice provided that the property owner would not sell his property except to a member of the Association. The restraint on alienation was not limited in time and purports to be a perpetual one, since it extends for as long as the Association is in existence.
It is also clear that the property owner's right to sell depends entirely upon the whim of three trustees of the Association. Under the constitution and bylaws, the power of election to membership in the Association is vested in a board of trustees, five in number, comprised of three association officers and two additional trustees elected by the membership. A quorum consists of three trustees.
An examination of the constitution and bylaws shows that there is no standard set up for admission to the Association. Thus, it is possible that three trustees by whim, caprice or for any reason, good or bad, or for no reason, could deny membership to any prospective alienee. If a property owner desired to sell his property and no member of the Association desired to purchase the same, the Association through its board of trustees could forever preclude him from disposing of his property to another by the simple device of refusing to admit the prospective purchaser as a member. The property owner's sole remedy would be to secure sufficient supporting votes of the Association's members at an annual meeting to elect a majority of the trustees who would admit a prospective purchaser to membership.
*574 4 Restatement, Law of Property, 2393, § 406, states in part:
"[A] restraint on the alienation of a legal possessory estate in fee simple which is, or but for the restraint would be, indefeasible is valid if, and only if,
(a) the restraint is a promissory restraint * * *, and
(b) the restraint is qualified so as to permit alienation to some though not all possible alienees, and
(c) the restraint is reasonable under the circumstances, * * *."
Even though a restraint on alienation is a promissory restraint and is qualified so as to permit alienation to some though not all possible alienees, the restraint must still be found to be reasonable under all the circumstances. The following pertinent factors, when found to be present, tend to support the conclusion that the restraint is unreasonable: (1) the restraint is unlimited in duration; (2) the number of persons to whom alienation is prohibited is large.
Under the law generally prevailing throughout the country, a deed which vests in the grantee the title in fee cannot validly impose, either as a condition or as a simple provision, a restraint against alienation to anyone other than some person or persons designated, or those of a class. 41 Am. Jur. 117, § 77; Johnson v. Preston, 226 Ill. 447, 80 N.E. 1001, 10 L.R.A., N.S., 564 (Sup. Ct. 1907); Braun v. Klug, 335 Mich. 691, 57 N.W.2d 299, 36 A.L.R.2d 1434 (Sup. Ct. 1953); see Annotation, 36 A.L.R.2d 1437; 6 American Law of Property 454, § 26.32; Deepwater R. Co. v. Honaker, 66 W. Va. 136, 66 S.E. 104, 27 L.R.A. (N.S.) 388 (Sup. Ct. App. 1909); Manierre v. Welling, 32 R.I. 104, 78 A. 507 (Sup. Ct. 1911). For limitation on alienation for an unreasonable time see Wrubel Realty Corp. v. Wrubel, 138 N.J. Eq. 466 (Ch. 1946).
In the present case the restraint against alienation permits the property owner to sell only to a small number of persons. There are 23 members in the Association, three of whom have not paid dues and can be dropped from membership. Unquestionably, a property owner, so restricted in his opportunities to sell, may find it difficult to secure a fair price for *575 his property, if any. In the instant case Valentine offered to sell his property to the Association in 1953, but the latter refused to meet his asking price.
Considering all the circumstances of this case, I am satisfied that the covenant restricting alienation of the property is void as repugnant to the fee conveyed to the defendants for the reason that (1) it is unlimited in duration, (2) unreasonable in the limitation of the number of permitted alienees, and (3) grants to the plaintiff unconscionable power to control prospective purchasers of property. The covenant is declared invalid and unenforceable; the defendants are adjudged to be owners in fee simple of their property with no restriction as to disposal thereof.

3.
Plaintiff argues that the covenant restricting sale of property to members of the Association implies that all purchasers of property in the Mountain Springs area must become members of the Association.
It is well settled that the courts will not make a better or different contract than the parties themselves have seen fit to enter into. Accordingly, it is universally recognized that an implied covenant can arise only by necessary implication from the specific language of a contract, or because it is indispensable to carry into effect the intention expressed in the contract. William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 486-487 (Ch. Div. 1953).
It is also firmly established that the policy of the law is against the imposition of restrictions upon the use and enjoyment of land, and that such restrictions are to be strictly construed. The foundation of this policy is that while restrictions tend to protect property, they also impair alienability. Hammett v. Rosensohn, 46 N.J. Super. 527, 535 (App. Div. 1957), affirmed 26 N.J. 415 (1958); Bruno v. Hanna, 63 N.J. Super. 282, 285 (App. Div. 1960). Furthermore, ambiguities and uncertainties are resolved in favor of the *576 owner's unrestricted use of his land. To establish a restrictive covenant, express or implied, the proof must be clear and satisfactory. Frisch v. Rutgers Village, 8 N.J. Super. 392, 400 (Ch. Div. 1950); Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J. Super. 111, 115 (App. Div. 1961).
I have already held that the express covenant set forth in paragraph (i) in the deed is void and unenforceable because it restricts the alienation of the land. As I view it, the covenant does not carry with it a necessary implication that the purchaser of property in the development must become a member of the Association. Such an implication would likewise restrict alienation for the reasons hereinbefore set forth pertaining to the express covenant, which will not be repeated here. The implied covenant urged by plaintiff cannot be sustained.

4.
Plaintiff claims that paragraph (h), which grants to defendants an easement and a profit a prendre as an appurtenance to their lands, and paragraph (i), which restricts the sale of property to association members, are mutually contingent and dependent upon each other. I draw no such conclusion. In my judgment these paragraphs are independent and are not contingent upon the validity of both. A court of equity will not give to an easement and a restrictive covenant an effect different from their legal effect and declare them to be conditional easements or covenants, because it will give better protection to a party. Coursen v. Canfield and Van Syckle, 21 N.J. Eq. 92, 100 (Ch. 1870). Nor will the court make a better or different contract than the parties have seen fit to enter into. William Berland Realty Co. v. Hahne & Co., supra.

5.
There remain for determination the following issues set forth in the pretrial order: (1) the right of plaintiff to impose *577 rules and regulations on nonmember property owners as to the use of common facilities owned by plaintiff, which nonmembers may be entitled to use, and (2) whether defendants are liable for contribution for cost of the maintenance of said property.
Plaintiff, as successor in title to lands retained by Mountain Springs, Inc., owns the title in fee of the lake, stream, beaches, streets and park land in the area. However, said title is subject to easements held by defendants.
The land sold to Alma Boyd by Mountain Springs, Inc. was conveyed by reference to lots laid out on three maps of the area, which were filed with the Passaic County Register of Deeds. Said maps contained a location of all lots, streets, parks, lake and stream in the area.
When lands are sold with reference to a map upon which lots and streets are delineated, there is a dedication of such streets to the public and such dedication continues and cannot be revoked except by consent of the municipality. After such dedication to the public use, the public has the right to appropriate them at any time it wants or convenience requires, no matter how long delayed, and these public rights can only be destroyed by proper municipal action, usually by vacation. Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 125-126 (Sup. Ct. 1956), and see cases cited therein. In the case sub judice, it is conceded that the streets in the development are dedicated, although not yet accepted by the municipality. However, while not so accepted, such dedication cannot be revoked and the municipality may formally accept said streets if and when it desires to act. Brindley v. Borough of Lavallette, 33 N.J. Super. 344, 352 (Law Div. 1954); Highway Holding Co. v. Yara Engineering Co., supra, 22 N.J., at p. 126.
Thus defendants, as members of the public, have a right to use all streets of the area, without compensation to plaintiff.
Under the deeds given, defendants have an easement in common with all other property owners of Mountain *578 Springs to use the lake and stream for "boating, bathing, fishing, etc." The defendants and other property owners (who are members of the Association) under the easements contained in their deeds are owners of the dominant estate in said lake and stream. The Association, as successor in title of Mountain Springs, Inc., is owner of the servient estate. In the absence of an agreement, the owner of the servient estate cannot require contribution by owners of the dominant estate for expenses incurred for the maintenance of the lake and stream. Furthermore, plaintiff Association cannot impose rules and regulations upon defendant property owners in their use of the facilities granted under the easements.
Judgment will be entered in accordance with the foregoing opinion.