653 A.2d 461

**R.H. MACY & CO., INC. et al.**

v.

**The MAY DEPARTMENT STORES COMPANY et al.**

**No. 55, Sept. Term, 1994.**

Court of Appeals of Maryland.

Feb. 9, 1995.

John Henry Lewin, Jr. (C. Carey Deeley, Jr., Daniel W. China, Venable, Baetjer and Howard, all on brief), Baltimore, for appellants.

Ronald J. Dolan, St. Louis, MO (Lawrence S. Greenwald, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, all on brief), Baltimore, Jack McKay (Christine N. Kearns, Shaw, Pittman, Potts & Trowbridge, all on brief), Washington, DC, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

This case involves White Marsh, a regional shopping center on the west side of Interstate 95, a short distance north of the Baltimore Beltway in Baltimore County. When White Marsh opened there were five anchor department stores, each of which owned its store site in fee. All of the anchor stores were parties, together with the developer, to a Construction, Operation and Reciprocal Easement Agreement (the REA). When one of the original department store operators became insolvent, another anchor store claimed that the REA prohibited transfer of the insolvent's original store site and expansion area. The issue in this case is whether the purported restriction on alienation is legally valid.

White Marsh was developed by The Rouse Company through two general partnerships which we shall call "Rouse." The REA was entered into July 17, 1980. The department store signatories to the REA were Sears, Roebuck and Co. (Sears), J.C. Penney Properties, Inc. (Penney), Hutzler Brothers Company (Hutzler), Woodward & Lothrop, Inc. (W & L), and an indirect subsidiary of R.H. Macy & Co., Inc., Marymarsh Properties Corp. (Macy).[1] We shall call these anchor department stores the "Majors." In the REA Hutzler covenanted with Rouse, Penney, Macy and W & L (but not with Sears, which disclaimed any right of enforcement) that Hutzler, for fifteen years from the date that its store opened for business, would "continually operate or cause the Hutzlers Main Building to be operated as a department store of at least 100,000 square feet or more of Floor Area under the name

---

1. The REA was amended July 22, 1981. No party contends that the 1981 amendments affect the issues before us, although some of the amendments change paragraphs of the REA that are cited by the parties. Further, the portions of the REA included in the record extract are reproduced from the original 1980 version. For these reasons references to the REA in this opinion are to the original 1980 REA.

'Hutzlers'...."[2] Similar operating covenants were made by the other Majors in the REA.

Section 20.2 of the REA contains certain restrictions on transfer of a Major's fee simple property in White Marsh. Section 20.2 in part reads:

"(a) Each Party shall, in respect of the Parcel owned by it, have the right at any time and from time to time (and nothing in this REA or in this Article contained shall be deemed to restrict any such right) to Transfer, make a Mortgage of, or consummate a Sale and Leaseback in respect of its Parcel, provided, however, that the following provisions of this Section 20.2 shall be complied with (and be conditions to the exercise of such right, when so provided herein):

"(i) In the case of a Transfer other than a Sale and Leaseback:

"(1) As to the Parcel of a Major:

(aa) prior to the expiration of the Operating Covenant of such Major, the following (x) and (y) shall be conditions to such right: (x) the Parcel in question may only be Transferred as a whole, along with the entire interest of the Transferor under this REA; and (y) the Transferee of such Major's Parcel shall be an Affiliate of the Transferor;

\*  \*  \*

"(iii) In the case of a Sale and Leaseback of the Parcel in question, it shall be a condition of such right that the transactions expressly cover the interest under this REA of the Transferor in respect of the Parcel which is the subject of such Sale and Leaseback, and that the transactions be expressly made subject and subordinate to this REA."

"Affiliate" is a defined term in the REA meaning, essentially, an entity over which another exercises more than fifty percent control.

---

**2.** The complaint states that Hutzler's operating covenant expires in August 1996.

In April 1989 Hutzler conveyed its site at White Marsh in fee to certain investors (the Investors) who leased the site back to Hutzler.[3] It appears to be conceded between the parties to the instant litigation that none of the Investors was the owner or operator of a department store comparable to the Majors.

By deed dated September 27, 1989 the Investors conveyed their legal title to the Hutzler parcel to Comco, Inc., as nominee for a new Maryland limited partnership, RL Holdings Limited Partnership. The latter was formed by the Investors with RL Holdings, Inc., a Maryland corporation, and held the beneficial interest in the property. We shall hereinafter refer to the holder of the reversionary interest in the Hutzler parcel, underlying the leaseback to Hutzler, as Comco/RL.[4]

On January 2, 1990 Hutzler made an assignment for the benefit of its creditors, and jurisdiction over the insolvent's estate was assumed by the Circuit Court for Baltimore County. It further appears that Comco/RL terminated its lease to Hutzler, pursuant to the provisions of that lease, based on defaults by Hutzler, including nonpayment of rent.[5] Following Hutzler's economic demise Rouse undertook to place another major store in the space where Hutzler was no longer operating a department store.

By April 1990 Rouse and Comco/RL had negotiated an arrangement with The May Department Stores Company

---

3. Specifically, the Investors were Lafayette Place Associates Limited Partnership, a Maryland limited partnership, MRHC Limited Partnership, a Maryland limited partnership, and Sanford I. Rosen, as tenants in common.

4. No contention is made in the case before us that the leaseback to Hutzler fails to conform to any requirement for a leaseback contained in the REA. There is no contention that Comco/RL is not an affiliate of the Investors, as "affiliate" is defined in the REA. Nor is there any contention that the purchaser/lessor under a sale and leaseback of the site of a Major is not permitted by the REA to transfer to an affiliate.

5. There is no contention in the case before us that Comco/RL, following Hutzler's insolvency, did not hold fee simple title to the former Hutzler site that was unencumbered by the lease to Hutzler.

(May Co.) under which it would operate a Hecht store on the former Hutzler site. The agreement included a contribution by Rouse to May Co. of $1.8 million toward May Co.'s costs of acquiring and renovating the property. By letter of April 3, 1990 Rouse advised Macy that May Co. would replace Hutzler at White Marsh and that May Co. desired to expand the area of the former Hutzler store. Rouse sought Macy's agreement in principle, prior to execution of appropriate amendments to the REA and to the White Marsh site plan. Macy replied that it was unable to take any position because of insufficient information and that it expected Rouse to enforce the existing REA.

By deeds dated May 18, 1990 Comco/RL conveyed the former Hutzler site to May Co., and Rouse conveyed the Hutzler expansion site to May Co. In March 1991 Rouse circulated amendments to the REA which Macy refused to sign. Thereafter Macy brought the instant action in the Circuit Court for Baltimore County against Comco/RL, May Co., and Rouse alleging that the conveyances to May Co. violated the REA.

The heart of Macy's allegations is that "[a] transfer of a parcel to a non-affiliate of the transferor, whether or not such transfer is subsequent to a sale and leaseback, is prohibited under the Transfer Restrictions, Section 20.2(a) of the REA." The relief requested by Macy included a judgment declaring that "operation of a department store under a trade name other than 'Hutzlers' ... on the Hutzler Parcel is in violation of the REA and thus consent from Macy ... was required...." Macy also sought an injunction against "the operation of a department store on the Hutzler Parcel under a trade name other than 'Hutzlers' ... until the expiration of the Section 9.6 Operating Covenant in August 1996."

Macy's brief in this Court fleshes out its legal theory, as follows:

"Section 20.2(a)(i)(1)(aa) [of the REA] provides that, prior to the expiration of any Major's Operating Covenant (fifteen years), a transfer of any Major's parcel could only be

effected by a sale and leaseback transaction, or by a transfer to an affiliate of the Major. Under these provisions, two types of transfers of a Major's parcel are expressly permitted: (1) a sale and leaseback; or (2) a transfer to an affiliate. Under the REA, a transfer of a parcel to a non-affiliate of the transferor, whether or not such transfer is subsequent to a sale and leaseback, is expressly prohibited for a period of fifteen years. However, Sections 27.1 and 27.2 set forth procedures for amending the REA which would allow transfers to non-affiliates by consent of the parties prior to fifteen years."

Brief of Appellants at 3.

Under Macy's construction of the REA, absent transfer by sale and leaseback or to an affiliate, an amendment of the REA is required, or the owner of a Major's site must wait for the expiration of the operating covenant, in order to transfer. The Hutzler covenant was not due to expire by its terms until approximately six and one-half years after Hutzler made its assignment for the benefit of creditors. Macy acknowledges that "[f]rom a business perspective [its] consent to the Hecht's store would have been sensible." Reply Brief of Appellants at 20. Macy, however, further submits that "[t]he only question would be the amount of money needed to compensate Macy for the economic risk and loss of business caused by the advent of a new retailer in a refurbished store...." *Id.*

In the circuit court the defendants contended that the REA did not even address, and hence could not prohibit, a further transfer, following an authorized sale and leaseback transaction, by the owner of the reversionary interest into which a Major's leasehold interest had merged following termination of the lease for default. The defendants also contended that the construction on which Macy relied made the covenants of REA § 20.2 an invalid restraint on alienation. The Circuit Court for Baltimore County, adopting the latter argument, granted summary judgment in favor of the defendants. The circuit court further declared that May Co. had "properly acquired the Hutzler parcel and the Hutzler expansion parcel

and remains free to operate a Hecht's Department Store on those parcels."

Macy appealed to the Court of Special Appeals. Before consideration of the matter by that court, we issued the writ of certiorari on our own motion. We shall affirm on the ground relied upon by the circuit court. In so doing, we assume, *arguendo*, that the provisions of REA § 20.2 on which Macy relies can bear, both textually and under the canons of construction for restrictions on alienation, the construction that Macy seeks to place upon the words.

Restraints on alienation have been classified by some treatises as disabling, promissory, or forfeiture. Restatement (First) of Property § 404 (1944) (Property I); 5B R. Powell, *Powell on Real Property* § 839, at 77–2 through 77–6 (1991) (Powell). These classifications have been developed to assist in determining who may enforce a valid restraint, by what remedy, and with what effect, Property I § 404, comment c, and not to assist in determining a restraint's validity, *id.,* comment a. The three classifications are described in Property I § 404 as follows:

"(1) A restraint on alienation ... is an attempt by an otherwise effective conveyance or contract to cause a later conveyance

(a) to be void [ (a disabling restraint) ]; or

(b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey [ (a promissory restraint) ]; or

(c) to terminate or subject to termination all or a part of the property interest conveyed [ (a forfeiture restraint) ]."

REA § 20.2(a) in part states that compliance with its provisions shall "be conditions to the exercise of" the right to transfer therein described. If that language has the effect of creating a disabling condition, then the restraint would be invalid under the rule recognized in Property I § 405 ("Disabling restraints, other than those imposed on equitable interests

under a trust, are invalid."). *See Meade v. Dennistone,* 173 Md. 295, 305–06, 196 A. 330, 335 (1938).

■ Macy, however, does not contend that the deeds to May Co. are void. The complaint rests on a construction of provisions in the REA, allegedly breached by parties bound thereby, for which Macy seeks monetary, injunctive, and declaratory relief. We accept Macy's characterization of the restraint that it seeks to enforce as promissory.

The nature of a promissory restraint is discussed in comment *g* to Property I § 404.

"The contractual liability 'results from a breach of an agreement not to convey' not only when the promise not to convey is unqualified but also when it is qualified by permitting alienation with consent and the consent is not obtained; or by permitting alienation after a certain period of time and alienation is made before the period of time elapses; or by permitting alienation by some methods and alienation is by one of the methods not permitted; or by permitting alienation to some people and alienation is to people not in such described group."

The test to determine the validity of restraints on alienation of indefeasible possessory estates in fee simple is addressed in Property I § 406 which states, in relevant part:

"[A] restraint on the alienation of a legal possessory estate in fee simple which is, or but for the restraint would be, indefeasible is valid if, and only if,

(a) the restraint is a promissory restraint or a forfeiture restraint, and

(b) the restraint is qualified so as to permit alienation to some though not all possible alienees, and

(c) the restraint is reasonable under the circumstances...."

Comment i to Property I § 406 presents factors to be considered in determining reasonableness, as follows:

"Even though a restraint on alienation is a ... promissory restraint and is qualified so as to permit alienation to some

though not all possible alienees, the restraint must still be found to be reasonable under all circumstances. The following factors, when found to be present, tend to support the conclusion that the restraint is reasonable:

1. the one imposing the restraint has some interest in land which he is seeking to protect by the enforcement of the restraint;
2. the restraint is limited in duration;
3. the enforcement of the restraint accomplishes a worthwhile purpose;
4. the types of conveyances prohibited are ones not likely to be employed to any substantial degree by the one restrained;
5. the number of persons to whom alienation is prohibited is small....

. . . .

"The following factors, when found to be present, tend to support the conclusion that the restraint is unreasonable:

1. the restraint is capricious;
2. the restraint is imposed for spite or malice;
3. the one imposing the restraint has no interest in land that is benefited by the enforcement of the restraint;
4. the restraint is unlimited in duration;
5. the number of persons to whom alienation is prohibited is large...."

Comment k to Property I § 406 states that a promissory restraint where the power of alienation is limited to a few potential transferees is normally unreasonable and therefore invalid. *See also* Powell § 843.

Macy submits that the circuit court failed to analyze the reasonableness of the alleged restraint. In its analysis the circuit court quoted at length from *Kenney v. Morgan,* 22 Md.App. 698, 325 A.2d 419 (1974), which in turn quoted substantially from *Northwest Real Estate Co. v. Serio,* 156 Md. 229, 144 A. 245 (1929). Both cases invalidated the restraints respectively involved. The circuit court in the case before us

concluded that "[t]he restraints imposed by the REA in the instant case are as repugnant as those dealt with" in *Serio* and in *Kenney.*

*Serio* involved a real estate company's 1927 deed to a building lot in a then Baltimore City suburb. The habendum recited that, for the purpose of maintaining "a desirable high class residential section ... no owner of the land hereby conveyed shall have the right to sell or rent the same without the written consent of the grantor herein which shall have the right to pass upon the character desirability and other qualifications of the proposed purchaser...." 156 Md. at 231, 144 A. at 245. By its terms the restraint ceased to operate on January 1, 1932. The Court stated the issue to be whether the restraint was "void as being repugnant to the granted estate." *Id.*

The Court said that the practical effect of the reservation was to give the grantor "unqualified control for a term of years over the disposition of the property by sale or lease." *Id.* at 234, 144 A. at 246–47. The recited purpose of the restriction simply explained, rather than limited, the power to forbid transfer to those "who fail to conform, in the opinion of the grantor's officers, to those indefinite standards." *Id.* at 235, 144 A. at 247. The Court concluded by saying that "[t]he existence of such a discretionary control would be plainly incompatible with the freedom of alienation which is one of the characteristic incidents of a fee simple title." *Id.*

May Co., Rouse, and Comco/RL submit that the fatal defect in the restraint in *Serio* was the unbridled discretion in the grantor. Macy analyzes *Serio* as having applied a "repugnancy rule." [6] Macy further submits that "[u]nlike the repugnan-

---

6. The "repugnancy rule" evolved from Littleton's statement that a condition on a fee simple that the transferee not alienate to anyone is void "as against reason," but a condition against transfer to a particular person is valid, Littleton, *Tenures* §§ 360 through 362, and from Lord Coke's extension of that proposition stating that "such conditions are repugnant to the fee granted and that such conditions are prohibited by the statute Quia Emptores. Coke on Littleton ff. 206b, 233a."

cy rule under which all restraints on alienation are held to be void, under the modern reasonableness rule, restraints against alienation which are intended by the parties to attain or encourage accepted social or economic ends are upheld as reasonable and valid." Brief of Appellants at 11. If the circuit court had correctly applied a reasonableness test, submits Macy, the restraint on which Macy relies would be found to be valid.

Macy presents an eloquent justification of the reasonableness for the imposition of the transfer restriction. Macy says:

> "The transfer restriction along with the operating covenants are the linchpins of the REA. Their purpose is to assure a continuity of the same major retailers in the same place and provide security to the developer, majors and small retailers who invest in the mall. The transfer restriction is therefore vital to enabling the parties to realize their goal of forging interdependence among six sophisticated commercial entities with the intent of enhancing commerce through the development of a shopping mall. In fact, without the REA and its restrictive provision there would be no shopping mall at White Marsh. Therefore, the transfer restriction facilitates land development, investment opportunities and commerce. On the other hand, little if any harm is likely to flow from its enforcement. The parcels which are restricted are not readily marketable and the time period of the restriction is limited to fifteen years. Moreover, it is not an unlimited prohibition on all transfers. Sale and leaseback transactions are permitted as well as transfers to an affiliate and additional transfers are permitted by way of amendment to the REA."

Brief of Appellants at 19–20.

■ There is no need, in the case before us, to choose whether the repugnancy rule, in some form, the reasonableness rule, or some combination of the two, should test the

Restatement (Second) of Property (Donative Transfers) Introductory Note to Part II, at 142–43 (1983).

validity of the alleged restraint in the REA at White Marsh.[7] This is because, under either the reasonableness rule recognized in Property I or the repugnancy rule, the alienation restraint for which Macy contends was void when Macy sought to enforce it. Macy's exposition of the reasonableness of the REA restraint applies to White Marsh while Hutzler was operating one of the anchor department stores there. But, when Macy sought to enforce the restraint, the Hutzler store was "dark."

■ Property I § 406, comment n deals with "[a] restraint on the alienation of that which is or otherwise would be an indefeasible legal possessory estate in fee simple...." The rule is that if "the restraint is valid at the time of its creation in the light of the circumstances which then exist, a change in circumstances which makes the enforcement of the restraint unreasonable renders it invalid." *Id.* Conversely, a restraint invalid at the time of its creation does not become valid by a change in circumstance at a later date. *Id.* Consequently, "[t]he restraint must not only be valid at its inception, but

---

7. We note that critics of the repugnancy rule, in addition to the American Law Institute, include P. Bordwell, *Alienability and Perpetuities II*, 23 Iowa L.Rev. 1, 14 (1937), who states:

"The great objection to repugnancy ... is that it explains nothing. It begs the question. By definition it makes alienability a characteristic of the fee simple and then rejects general restraints as inconsistent with the definition.... In a period of growth, such conceptual thinking is a great obstacle to adaptability."

Further, M. Schnebly, *Restraints On Alienation, in* VI *American Law of Property* § 26.29, at 452 (A.J. Casner ed. 1952), speaks of *Serio*, 156 Md. 229, 144 A. 245, as a case in which "one finds another illustration of the need for modification of the strict rules against restraints."

A blend of rationales, at least semantically, appears in *Mountain Springs Ass'n v. Wilson*, 81 N.J.Super. 564, 196 A.2d 270 (1963), where the court said:

"[T]he covenant restricting alienation of the property is void as repugnant to the fee conveyed to the defendants for the reason that (1) it is unlimited in duration, (2) unreasonable in the limitation of the number of permitted alienees, and (3) grants to the plaintiff unconscionable power to control prospective purchasers of property."

*Id.* at 575, 196 A.2d at 276.

must pass the test for validity at the date when the enforcement of it is sought." *Id.*

Under Macy's construction of the REA, and absent amendment of that document, Comco/RL cannot convey its fee in order to have the former Hutzler site used for a department store. Hutzler no longer exists as an operating business entity. It is undisputed that neither Comco nor RL has any "affiliate" capable of operating a department store. Thus, most of the universe is excluded from the class of permissible alienees, and the permissible class of alienees cannot fulfill the mutually beneficial business purposes underlying the REA. It appears to be a principle of shopping center retailing, acknowledged even by Macy, that a dark anchor store harms the other anchors, the developer, and the smaller stores. Finally, under Macy's argument the restraint would, absent REA amendment, remain in effect following Hutzler's January 1990 insolvency until August 1996. Under all of these circumstances the alleged restraint became unreasonable and void as a matter of law, both as to the Comco/RL site and as to the expansion site. Alternatively, the restraint is, *a fortiori*, repugnant to the fee interests in the two parcels owned by Comco/RL and by Rouse, respectively.

Our conclusion under the reasonableness test is supported by the unreported opinion of the United States District Court for the Eastern District of Kentucky in *Western & S. Life Ins. Co. v. Crown Am. Corp.*, 877 F.Supp. 1041 (E.D.Ky.1993). The case involved a shopping mall owned by the plaintiff in which there were four anchor department stores. One of the anchors, Hess, the operator of a number of stores at various locations, was on the verge of financial failure. The creditors of Hess required it to downsize and eliminate unprofitable stores, including the one at the plaintiff's mall. Hess planned to transfer its site to another department store, Lazarus. The plaintiff sought to enjoin the transfer based on a provision of the operating agreement between the plaintiff and the anchors which prohibited an anchor from transferring its site to a non-affiliate.

At an emergency hearing the court had refused a preliminary injunction based on its tentative conclusion that the restraint had become unenforceable because of changed circumstances, including Hess's financial failure and the fact that there was no affiliate. After trial, the court held that "an even more patent reason to hold the restraint void is that the section constitutes an unreasonable restraint on alienation." 877 F.Supp. at 1046. The court reasoned in part that

"the practical effect of this restraint is to take the real estate out of the ordinary stream of trade or commerce.... [T]he restraint would have the effect of leaving the site 'dark.' This would cause economic waste contrary to the policy disfavoring restraints on alienation. As such, the restraint is unreasonable for this reason alone."

The unreasonableness of the restraint in the REA, under the present circumstances, is not altered by the possibility that May Co. might negotiate an amendment of the REA with Macy, the other Majors, and Rouse. *Cf. Clark v. Clark,* 99 Md. 356, 58 A. 24 (1904) (will provision requiring unanimous consent of all grantees to transfer property for partition for ten years would "practically" amount to a restraint on alienation for ten years and is void); *Tuckerton Beach Club v. Bender,* 91 N.J.Super. 167, 219 A.2d 529 (1966) (provisions only allowing transfer to persons who would be eligible and approved for membership under rules adopted at discretion of club are unreasonable and void); *Mountain Springs Ass'n v. Wilson,* 81 N.J.Super. 564, 196 A.2d 270 (1963) (requirement that transfers only be to members of association is void where three trustees could deny membership); *Lauderbaugh v. Williams,* 409 Pa. 351, 186 A.2d 39 (1962) (restriction only permitting transfers to members of association is invalid where three members could reject applicant); Property I § 406, comment h ("The fact that alienation may be freely made if the consent of some other person is obtained does not remove to any extent the objection to the restraint imposed.").

For all of the foregoing reasons the judgment of the Circuit Court for Baltimore County is affirmed.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-
MORE COUNTY AFFIRMED. COSTS TO BE PAID BY
THE APPELLANTS.*