## Lovejoy v. Reed.

Feb. 12, 1946.

154

Allen, Duncan, Duncan & Arnold for appellant.

Hunt, Kessinger & Lisle for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

This was an action by appellee, P. H. Reed, to recover on a verbal contract with appellant, Viola Lovejoy, the sum of $2500 as a real estate broker's commission alleged to have been earned on a projected sale of a lease on a hotel in St. Louis, Missouri, which projected sale was negotiated by appellee on behalf of appellant. This appeal has been taken from a judgment for the full amount of $2500 in favor of appellee broker entered upon a trial which was held without the intervention of a jury by agreement of the parties.

The appellant urges as grounds for reversal (1) the trial court's error in overruling her general demurrer to the petition of plaintiff below and (2) the trial court's error in rendering a judgment that was contrary to the law and the evidence of the case.

Appellee alleged in his petition that he was at all times mentioned therein a licensed real estate broker of Chicago, Illinois; that C. A. Lovejoy was the husband of appellant and that he owned a lease on a hotel in St. Louis, Missouri, for a term extending from March 1, 1939, to February 28, 1954; that C. A. Lovejoy died testate in April of 1942, leaving to appellant under his will a life estate in said lease; that appellant thereafter, on April 25, 1942, employed, through her son and agent, C. Kildow Lovejoy, the appellee to sell said lease for

$50,000, and agreed to pay appellee $2500 commission to produce a purchaser who was ready, able and willing to buy same at said price; that appellee produced Victor G. Williams who entered, on May 2, 1942, a written agreement with appellant to purchase said lease; that under the terms of the written agreement $10,000 was to be paid in cash and $20,000 was to be paid in notes in favor of appellant and the remaining $20,000 was to be paid in notes in favor of appellant's lessor for the consent of the latter, which was required under the lease, for transfer of the lease from appellant to said Williams; that appellant failed and refused to carry out the said written agreement to sell said lease to said Williams, who was at all times ready, able and willing to purchase on the terms of the written agreement between him and appellant: that appellant thereafter refused to pay appellee his agreed commission of $2500.

The foregoing statements constitute the main, essential averments of the petition so far as it is deemed necessary to set them out herein.

It may also be noted that other facts shown by the pleadings and proof are that C. A. Lovejoy died while a resident of Tennessee, where his will was probated, in addition to its similar probation in Kentucky and Missouri; that the brokerage contract between appellant and appellee was made by appellant's son and authorized agent telephoning from Kentucky to appellee at his office in Illinois; that the law of Missouri was pled and proven as controlling and governing the administration and disposition of C. A. Lovejoy's estate situated in Missouri, under the laws of which State the hotel lease was considered personalty; that sale of a decedent's assets situated in Missouri had to receive approval by a probate court in Missouri under the laws of that State before final consummation; that the will in question gave appellant's children a remainder interest in the entire estate but gave appellant full right to sell any part of the estate for reinvestment if such sale were first approved by her two sons; that the two sons as well as their mother, the appellant, in fact approved the sale of the Missouri hotel lease; that the son who made the deal with appellee did have full authority to act on behalf of his mother and the other son, and representation was made to appellee in the telephone transaction that the sale would be carried out without any difficulty or

lack of any necessary authority; that after the deal between appellant and appellee through the telephone conversation of April of 1942 and also after the entering of the written contract of May 2, 1942, by which the proposed purchaser Williams agreed to buy the lease from appellant for $50,000 upon agreeable terms, an ancillary administrator named Wallace was appointed on May 4, 1942, to act in Missouri; that Wallace, acting under his authority, refused to carry out the written agreement of May 2, 1942, or to sell the hotel lease to Williams or to request probate court approval of the proposed sale to Williams; that Wallace himself later sold the hotel lease to one Morris Steinbaum for $35,000 cash, but Steinbaum repudiated this latter transaction before it was approved by probate court in Missouri; that the ancillary administrator in Missouri thereafter continued operation of the hotel without making any sale of the lease; that the reason for refusal of the ancillary administrator to confirm and seek probate court approval of the written agreement of May 2, 1942, for a sale of the hotel lease to Williams was because the cash payment was too small and the balance too long deferred and the payment to the original lessor was not really required under Missouri law.

While the appellant pled the provisions of the Missouri law as governing the administration of her decedent's estate situated in Missouri, yet there appears to be no pleading in this record of the law of any outside jurisdiction as governing the verbal contract, which is the direct subject of this particular cause of action. Therefore, we must apply the common law of Kentucky to the facts of this case. Where the laws of no sister state are pled or proven, it will be presumed that the common law is in force upon the subject, that is upon the subject of brokerage contracts, and that the common law of this state should be applied. United States Cast Iron, etc., Co. v. Henry Vogt Machine Co., 182 Ky. 473, 488, 206 S. W. 806.

Applying the Kentucky law to this brokerage contract, we find that it has been held by this court that if a purchaser be procured by the broker, the broker is entitled to his commission, whether the sale is consummated or not, unless the failure to consummate the sale was due to some fault on his part. Swift v. Hale & Covington Real Estate Co., 196 Ky. 446, 244 S. W. 867.

We have also held that a broker is entitled to his commission, who, acting in good faith, procures a purchaser willing, able and ready to take the property upon the terms offered by the principal, and this is true notwithstanding the sale fails because of defect in the principal's title, of which the broker had no notice. Renick v. Mann, 194 Ky. 251, 238 S. W. 763.

The great weight of authority is to the effect that in the absence of a stipulation in the contract between the broker and his principal to the contrary, the former is entitled to his commissions if, acting in good faith, he procures a purchaser willing, able and ready to take the property upon the terms offered by the principal, although the contract is rescinded or the sale otherwise fails because of a defect in the principal's title, of which the broker had no notice. 8 Am. Jur. 1098 and citations therein.

The question as to whether a broker knows, when he makes his contract, that there is a defect in the property title or some other difficulty in closing a sale is one for submission to a jury for its decision. Hurt v. Sands Co., 236 Ky. 729, 33 S. W. 2d 653; Orr v. Woolfolk, 250 Ky. 279, 62 S. W. 2d 1029. The judge who tried this case did so without the intervention of a jury by agreement, and accordingly he himself acted as a jury and submitted to himself for decision the question of whether or not appellee broker had notice of any defect of appellant's title or of any difficulty of delivery of such title. The trial judge decided this question in favor of appellee broker, adjudging the latter had no notice of a title defect. The evidence sufficiently supports the trial judge's decision on this question, because appellant's son admitted on cross-examination that he thought there was no lack of authority for carrying out the proposed sale, stating as follows:

"I thought I had authority and I wanted him to dispose of the lease."

This appellant pled, in effect, impossibility of performance in this case, such impossibility being the interposition of Missouri law as governing administration of her decedent's estate in Missouri. However, one who by his own action has rendered himself incapable of performing a contract may not successfully plead "impossibility of performance" in defense of his breach.

Baumer v. Franklin County Distilling Co., 6 Cir. 135 F. 2d 384, reversing D. C., 43 F. Supp. 18, certiorari denied 320 U. S. 750, 64 S. Ct. 54, 88 L. Ed. 446.

This appellant might well have held a previous discussion of her projected sale with some prospective ancillary administrator in Missouri prior to appointment and qualification of the latter. In this manner an amicable and satisfactory arrangement could have been worked out for disposition of the hotel lease. But instead of following that plan, appellant appears to have fallen in with an ancillary administrator who insisted upon following his own discretion and arbitrarily refusing to submit the projected sale to probate court for approval. Conceivably, there might have been complete dispensation of ancillary administration in Missouri through agreement of appellant and her two sons among themselves and with all Missouri creditors of the estate followed by probate court approval of the arrangement. With dispensation of Missouri administration of the estate, assuming that this was possible, the projected sale might then have been consummated without difficulty or objection. Notwithstanding the possibility of getting a cooperating and harmonious Missouri administrator or the possibility of entirely dispensing with the necessity of Missouri administration, the appellant took such steps in this undertaking as to result in an ultimate impossibility of performance of the projected contract of sale that had been procured for her by appellee. We do not think appellant's plea of impossibility of performance is sufficient, under these circumstances, to sustain her defense.

It is clear to this court that the appellee broker had a reasonable right to assume that the appellant and her sons would facilitate all the preliminary requisites looking towards a final and complete sale of their hotel lease. Appellee had this implied, if not expressed, assurance in his telephone conversation with appellant's son and authorized agent. Although appellee broker did not know how the details would be worked out, yet because of the assurance to him that all requirements would be met according to the necessities, he went ahead and found a buyer, spending his time and money to do so. Appellee broker did every act and performed every service his broker's agreement required of him, climaxing his efforts by presenting a buyer who was ready, able and

willing to perform and who signed a written agreement to purchase appellant's lease and made a preliminary payment of $2500.00 in cash. Under these circumstances, the appellee appears to have adequately borne the burden of his contractual obligation without failing incident, and it would be nothing short of bleak injustice to deprive him of the earnings of his expended efforts. Nearly two thousand years ago, a gospel writer named Luke quoted his Master as having said, ''The labourer is worthy of his hire.'' After the passing of nearly twenty centuries that remains a great fundamental truth that may well be applied to the present everyday relationship between man and his fellowman.

For the reasons indicated, we think the trial court was correct in overruling the demurrer to the petition and we likewise think the trial court's judgment was in accord with the law and the evidence.

Judgment affirmed.