KENTUCKY–WEST VIRGINIA GAS
COMPANY and Kepco, Inc.,
Appellants,

v.

Harry MARTIN, Administrator with the
Will Annexed of the Estate of Gomer
R. Martin, Sr., Appellee,

and

Harry MARTIN, Administrator with the
Will Annexed of the Estate of Gomer R.
Martin, Sr., and Executor of the Estate
of Golda Martin, Cross-Appellant,

v.

KENTUCKY–WEST VIRGINIA GAS
COMPANY and Kepco, Inc.,
Cross-Appellees.

Nos. 85–CA–1830–MR, 85–CA–1904–MR.

Court of Appeals of Kentucky.

July 17, 1987.

Rehearing Denied Oct. 9, 1987.

Discretionary Review Denied by
Supreme Court Feb. 23, 1988.

Michael D. Baker, Lexington, Morris Kennedy, Ashland, James A. Combs, Prestonsburg, A. George Mason, Jr., Kingsport, Tenn., for appellants/cross-appellees.

Richard E. Fitzpatrick, Winnifred L. Bryant, Jeff A. Woods, Lexington, for appellee/cross-appellant.

Before HOWERTON, C.J., and COMBS and HAYES, JJ.

HAYES, Judge:

The question presented is whether the rule against perpetuities operates to void a preemptive option in favor of the lessor in an oil and gas lease between the parties to this appeal. We are convinced that the option falls within the proscription of the rule and is also barred by the Kentucky rule against unreasonable restraints on alienation and thus may not be enforced by appellees.

In 1921, the predecessors in title of both appellants and appellees entered into an oil and gas lease which provided, among other things, that "the lessor will have the refusal of buying gas from the lessee for thirty cents ($.30) per thousand cubic feet, the lessor to install and furnish his own meters." The lessors (appellees) attempted to exercise the option in 1966, but Kentucky-West Virginia Gas Company did not sell them the requested gas. In 1981, exercise of the option was again attempted, and the company again refused to sell the gas. Appellees then filed this action seeking damages for lost profits and an order directing Kentucky-West to sell gas to them at the option price of thirty cents per thousand cubic feet.

Appellants defended on the basis that: (1) the option was void for violation of the rule against perpetuities; (2) the action was barred by the statute of limitations; and (3) the federal natural gas acts deprived the state circuit court of jurisdiction to order them to sell gas to the Martins or to award damages for the refusal to do so. The trial court granted a partial summary judgment directing appellants to sell gas to the appellees at the option price and reserving the issue of damages for jury determination. The jury returned an award for lost profits amounting to $687,883 and this appeal ensued.

 We first examine this preemptive option in light of the rule against perpetuities and the rule against unreasonable restraints on alienation because if it fails to clear these hurdles we need not address the remaining issues presented by the parties. The preemption gives appellees the right of first refusal of buying the gas produced on the lease at a fixed price of $.30 per thousand cubic feet without limitation on the time for exercising the option. Thus the interest encompassed by the option is capable of vesting outside the perpetuity period and the rule is violated. Aside from that defect, however, we find that the option creates an unreasonable restraint on alienation. A preemption of unlimited duration at a fixed price constitutes a substantial restraint on alienability particularly when the price set falls below market value. See "Perpetuities—Pre-emptive Rights to Realty," 40 A.L.R.3rd 920, §§ 4a and b. Whatever commercial value the option may have possessed is negated by the low price. The lessee has no incentive to develop the minerals which are the subject of the lease when production costs far exceed the sale price. As stated by Professor Dukeminier in his work, *Perpetuities Law in Action,* (1962) at 128:

> Preemptions to purchase at less than market price are in substance, though not in form, direct restraints on alienation. If the owner must sell the proper-

ty at less than market price if he sells it, the property is not likely to be sold. In this instance, when production ceases the lease is terminated and any value the lease may have possessed is destroyed. The rule of unreasonable restraints concerns itself not with the possibility of remote vesting of estates but with the imposition of objectionable conditions or limitations upon present or future interests. *See* Simes, *Law of Future Interests* at 237, 282 (1966). It is obvious that to impose upon appellants the duty to sell all gas produced on the lease for the price fixed in the preemption any time the optionee may choose to require it is an unreasonable restraint on appellants' utilization of the lease and would cause a cessation of the development of the minerals contained therein. We therefore hold that the option cannot be enforced and the trial court erred in deciding otherwise.

█ Appellees also contend that the option is saved by the 1960 amendment to the Kentucky statutory enactment of the rule against perpetuities, KRS 381.216. That amendment softened somewhat the harshness of the rule by adopting a "wait and see approach" to options created after the effective date of the 1960 perpetuities act. In other words, should an otherwise void option *actually* be exercised within the period of the rule, it does not violate the rule. The case of *Three Rivers Rock Co. v. Reed Crushed Stone,* Ky., 530 S.W.2d 202 (1975) extended the benefits of the wait and see doctrine to preemptive options by holding that options created subsequent to the effective date of the 1960 amendment (KRS 381.216) are not subject to the rule against direct restraints on alienation but are to be governed by the rule against perpetuities. Clearly, an option void in 1921 cannot be redeemed by the application of a rule not effective until 1960.

█ However, appellees insist that because in 1973 there was a partial release by Kentucky-West of certain lands contained in the 1921 lease, a new lease was created and thus the 1960 amendment applies and the option is saved. That is, to say the least, a strained interpretation of the effect of the release. The release contained the following language:

By their execution hereof, lessor ... agrees to accept such release, to the extent aforesaid, and acknowledges and agrees that said lease is and shall *remain* in force and effect in accordance with the terms thereof.... (Emphasis added.)

It is very clear that the release created no new rights but merely emphasized the parties' intent that the 1921 agreement *remain* in full force and effect. It can in no way be construed as setting aside the 1921 agreement and creating a new agreement so as to bring it under the purview of the 1960 perpetuities law amendment.

The judgment of the Floyd Circuit Court is reversed.

HOWERTON, C.J., concurs.

COMBS, J., dissents.

COMBS, Judge, dissenting:

I respectfully dissent from the majority in this more than normally complicated case.

It appears to me that of the many issues within this appeal the one that is most appropriate for first consideration is that of the subject matter jurisdiction of the Floyd Circuit Court. If that tribunal did not have authority to adjudge the remaining substantive controversies brought before it, our review abruptly ends.

The United States Congress enacted the Natural Gas Act [N.G.A.] in 1938, and the Natural Gas Policy Act [N.G.P.A.] in 1978. The Federal Energy Regulatory Commission [F.E.R.C.] was created from this body of law. I will endeavor to paraphrase in capsule form only what I believe to be the pertinent portions of those laws.

The F.E.R.C. has exclusive jurisdiction under the N.G.A. to determine when Kentucky-West can divert dedicated gas and sell it to another customer. *See* N.G.A. § 7(b), 15 U.S.C. § 717f(b). However, certain gas can be removed from N.G.A. jurisdiction upon a determination by the F.E.R.C. that the gas qualifies under a particular

section of the act. *See* N.G.P.A. § 107, 15 U.S.C.A. § 3317. If this gas is removed from § 107 then its first purchaser has the right of first refusal to purchase that same gas. N.G.P.A. § 315(b), 15 U.S.C.A. § 3375. F.E.R.C. has exclusive jurisdiction to administer transactions under § 315(b).

November 19, 1982, is a crucial date for determining the jurisdiction of the trial court, for it was then that the F.E.R.C. determined that the well subject of this litigation qualified under § 107 of the N.G. P.A., rendering the N.G.A. abandonment provisions inapplicable.

Appellants' argument is that the Floyd Circuit Court *never* had jurisdiction over the subject matter. They say prior to November 19, 1982, the court lacked jurisdiction because then there was no F.E.R.C. prior abandonment approval; after that date they say the F.E.R.C. maintained exclusive jurisdiction to determine whether the proposed sale to the appellees met the N.G.P.A. § 315(b) right of first refusal standards. Appellees' argument is that the Floyd Circuit Court *always* had jurisdiction; before and after November 19, 1982. I see relative merit on both sides.

When the F.E.R.C. made its November 19, 1982 determination to remove the gas here in controversy pursuant to § 107, it removed it as Devonian Shale Gas. F.E.R. C. jurisdiction over Devonian Shale Gas ceases not as of the date upon which the § 107 ruling is made, but retroactively to December 1, 1978. N.G.P.A. § 601(a)(1)(B), 15 U.S.C. § 3431(a)(1)(B). *See also Pennzoil Company v. F.E.R.C.*, 645 F.2d 360 (5th Cir.1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982). Thus, I believe the Floyd Circuit Court had jurisdiction prior to November 19, 1982.

Appellants' argument against post-November 19, 1982 jurisdiction, again, is that on that date the F.E.R.C.'s ruling under § 107 brought into play the § 315(b) provision that gives rights of first refusal to purchase the gas to the original purchaser. But I do not see the purchase by the appellees as a first purchase.

18 C.F.R. § 277.204 reads as follows:

No seller may make a first sale of natural gas which is removed from NGA jurisdiction to any third party purchaser until the original purchaser has both rejected a bona fide offer ... and has rejected an offer substantially accepted in principle by a third party purchaser in an arms-length transaction.

It appears to me that Kentucky-West is the original purchaser of the gas from Kepco, who is the seller, and appellees are third-party purchasers. Thus, Kepco's sale to Kentucky-West was the first sale, and the sale to the Martins would be a second sale. So I do not believe the § 315(b) provisions apply here. However, since I view the proposed sale to the appellees as a second sale, I believe Kentucky-West must have a F.E.R.C. certificate of public convenience and necessity before it could consummate the sale to the appellees. N.G.P.A. § 7(c). Thus, as I see it, jurisdiction in the Floyd Circuit Court ended November 19, 1982.

The trial court's damage award has an onset date of December 13, 1981, which is within the jurisdictional time frame. But I believe any damages found to have been incurred after November 19, 1982 should be reversed.

I do not agree that the gas purchase provision violated either the rule against perpetuities or the rule against unreasonable restraints upon alienation. The rule against perpetuities is:

No interest in real or personal property is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest.

J. Dukeminier, *Perpetuities Law in Action*, p. 6 (Univ. of Ky. Press, 1962).

When the gas lease was executed, I believe the interests vested at that time and only the use and enjoyment was delayed. This did not violate the rule against perpetuities. *Chenoweth v. Bullitt*, 224 Ky. 698, 6 S.W.2d 1061 (1928).

Similarly, I would hold that there was no violation of the rule against unreasonable restraints upon alienation. But, probably, the most compelling fact for my dissent here is that the property in question has repeatedly been sold (alienated) and contin-

ues to be sold. Thus, I see no restraining effect of the gas purchase provision.

The above considerations lead me to dissent from the majority opinion. I would affirm the judgment of the trial court except to reverse on jurisdictional grounds the time period for recoverable damages.