The WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, Plaintiff,

v.

CROWN AMERICAN CORPORATION; Hess's Department Stores, Inc., Defendants.

and

Lazarus, Inc., Intervening Defendant.

Civ. A. No. 93–87.

United States District Court, E.D. Kentucky, at Covington.

June 4, 1993.

Robert B. Craig, Taft, Stettinius & Hollister, Crestview Hills, KY, for Western and Southern Life Ins. Co.

Dorothy M. Pitt, Rogers, Fuller & Pitt, Louisville, KY, for Crown American Corp., Hess's Dept. Stores, Inc.

John Zeiger, Matthew A. Kairis, Richard A. Chesley, Todd S. Swatsler, Jones, Day, Reavis & Pogue, Columbus, OH, for Lazarus.

## OPINION AND ORDER RE: INTERLOCUTORY INJUNCTIVE RELIEF

BERTELSMAN, Chief Judge.

### I. Introduction

This matter involves the Florence Mall and the series of agreements between the four anchor department stores and the owner/developer of the mall. The controversy requires the court to interpret the agreements in light of the closure of one of the anchors and the impending sale of its site to one of the other existing anchors.

The owner/developer of the mall is Western & Southern Life Insurance Company (hereinafter "Western & Southern"). The anchor store that closed is Hess's Department Stores, Inc., a subsidiary of Crown American Corporation (hereinafter "Crown/Hess's" or "Crown" and "Hess's"). The other three anchor stores are Sears, Roebuck & Co. (hereinafter "Sears"); J.C. Penney Properties, Inc. (hereinafter J.C. Penney"); and Lazarus, Inc. (hereinafter "Lazarus"), which is a subsidiary of Federated Department Stores, Inc. (hereinafter "Federated"). Crown/Hess's intends to sell its property to Lazarus.

Each of these companies is a signatory to, or otherwise bound by, the series of agreements commencing in 1974. Because of the various transfers and/or other evolving corporate relationships over the years the history of the occupants at the Hess's site is as follows: Adcor Realty Corporation (hereinafter "Adcor") and its affiliate that operated department stores owned by Adcor (Associated Dry Goods Corporation), owned and operated one of the four anchor sites under the name of H & S Pogue Company ("Pogue's"). Later, the store was operated under the name "L.S. Ayers." The site was then sold to Snyder's, Inc. ("Snyder's) by Adcor. Snyder's merged with Hess's, which in turn transferred its interest in the property to its parent Crown. Hess's decided to shut down the store and began taking steps to do so.

Western & Southern filed this action seeking to prohibit Crown/Hess from closing and to prohibit Crown/Hess from transferring the site to Lazarus. Jurisdiction is based on diversity.

In a previous order, the court declined to enter injunctive relief prohibiting the closure, but did enjoin the proposed transfer of the site to Lazarus. Furthermore, Lazarus was permitted to intervene. The matter was then set for trial on June 1, 1993 and June 2, 1993, to determine whether further preliminary injunctive relief should issue and whether the prior injunction should be maintained

or dissolved. Subsequently Crown/Hess's filed a motion for summary judgment.

At trial Robert B. Craig, W. Stuart Dornette, and Joan A. Heffernan appeared on behalf of Western & Southern; Dorothy M. Pitt and Ruby Fenton appeared on behalf of Crown/Hess's Department Stores, Inc.; and John W. Zeiger, Todd S. Swatsler, Richard A. Chesley, and Matthew A. Kairis appeared on behalf of Lazarus.

On June 3, 1993, the court held a hearing to orally advise the parties of its decision. At that time the court also heard argument on Western & Southern's motion for an injunction pending appeal under Fed.R.Civ.P. 62.

This opinion and order pertains to plaintiff's motion for interlocutory injunctive relief. It also embodies the court's definitive rulings on several issues of law and fact—including interpretation of the key contract provisions at issue—which will be binding for the rest of this case barring exceptional circumstances. A separate opinion and order, entered concurrently herewith, pertains to the Rule 62 motion.

For the reasons stated below, the court finds that the contract section invoked by Western & Southern to prohibit the transfer of the property is unenforceable as an unreasonable restraint upon alienation and that the anchor site at issue can be transferred. However, the transferee takes the property subject to the obligation to operate a "retail department store" on the premises as that phrase is defined below. Accordingly, the court's prior injunction will be dissolved.

## II. Factual Background

In formulating their relationship with regard to the operation of the Florence Mall, the parties have memorialized their agreements in several different documents, principally: the original "Operating Agreement" dated October 18, 1974, *Plf. Ex. 1;* the "Restated Operating Agreement" dated November 5, 1976, *Plf. Ex. 5;* and the supplemental agreements signed by each anchor setting forth, among other terms, the length and nature of the commitment. Hess's occupied what was originally the Pogue's or Adcor site and is bound by the terms of the supplemen-

tal agreement for that site. *Plf. Ex. 3.* The court finds that all of these documents constitute one agreement among the parties and must be construed *in pari materia.*

The pertinent sections of the "operating covenants" require each anchor to "continuously" operate a "retail department store" for the term contained in its respective supplemental agreement:

> "Section 8.1.... [Each anchor] covenants and agrees ... that it will (so long as [Western & Southern complies with its agreement to keep the Mall open]) ...
>
> (a) Continuously operate ... a two-level retail department store ... for such periods of time set forth in separate agreements dated as of the date hereof...."

*Plf. Exs. 1 & 5, § 8.1.* The operating covenant for the Hess's site provides:

> "Pogue agrees to continuously operate the Pogue store on the Pogue site as retail department store under the name 'Pogues' or 'The H. & S. Pogue Company' or other such trade name as is then being used to describe the stores being operated by [Associated] in the metropolitan Cincinnati, Ohio, area for a period of twenty (20) years from the date the Pogue store opens for business to the general public pursuant to the terms of the [Original Master] Operating Agreement, and for a period of ten (10) years thereafter as comparable retail department store with no requirement as to name."

*Plf. Ex. 3, § 8.1.*

The transfer restriction clause prohibits transfers between nonaffiliates before the end of the term of the contract and provides:

> "Section 25.2 ... (a) Each [anchor] ... shall have the right at any time, ... [to transfer, mortgage or sell and leaseback their property] and nothing in this agreement other than in this Article contained shall be deemed to restrict any such right (but, with respect to any such transfer before the termination date or the termination date as to a Party, as the case may be, the right to do so shall be conditioned on compliance with the terms and conditions hereinafter set forth):

(i) Transfer the parcel ... only if the Transferee is an Affiliate of the Transferor [and transferee assumes all of transferor's obligations under the various agreements]."

*Plf. Ex. 5, § 25.2.*

Finally, there is a section providing that In the event of any violation or threatened violation by any Party or any Occupant of any part of the Shopping Center Site or Future Development Parcel, if bound hereby, of any of the terms, covenants and conditions of this agreement, any of the Parties shall have the right to apply to a court of competent jurisdiction for an injunction against such violation or threatened violation.

*Plf. Ex. 1 & 5, 28.10, 27.10.*

### III. Analysis

#### A. Western & Southern Has Standing

■ Section 8.1(a) of the restated operating agreement recites that each named anchor covenants "with" and "for the benefit of" each other to continuously operate department stores on their respective premises for the term set forth in their respective supplemental agreements. Crown/Hess's argues that because this section does not expressly mention the mall owner/developer, Western & Southern is not an intended beneficiary and cannot enforce the covenant.

This argument is without merit. Section 27.10 of the operating agreement, to which Western & Southern is a party, gives "any Party" the "right to apply to a court of competent jurisdiction for an injunction against" the "violation or threatened violation" of "any part" of the agreement. Accordingly, the court finds that Western & Southern has standing to enforce the terms of the agreements.

#### B. The Operating Covenants Are Not Enforceable by Injunction, But Western & Southern's Damages Remedy Against Crown/Hess's Remains Unaffected

As properly read together, the operating covenants in the agreements and supplement for the Hess's site require the occupant to continuously operate a retail department store under the Pogue name for twenty years from the date the Pogue store opened and thereafter for ten years as a comparable retail department store but without the name requirement. It is undisputed that Crown and Hess's are bound by this covenant. Furthermore, it is undisputed that Pogue's opened for business on September 22, 1976. Thus, the 1993 proposed transfer falls within the thirty-year term.

Earlier, at the conclusion of the hearing on plaintiff's request for preliminary injunction, the court concluded the operating covenant is unenforceable primarily because the relief would involve the court in continuous supervision of the operations of the store to make sure that it was being operated in good faith as a going concern. *See CBL & Assocs., Inc. v. McCrory Corp.,* 761 F.Supp. 807 (M.D.Ga. 1991); *8600 Assocs., Ltd. v. Wearguard Corp.,* 737 F.Supp. 44 (E.D.Mich.1990); *M. Leo Storch Ltd. Partnership v. Erol's, Inc.,* 95 Md.App. 253, 620 A.2d 408 (1993). Indeed, the court notes that Western & Southern has abandoned its claim for any injunctive relief with regard to the operating covenant.

■ Alternatively, the court finds that it has become inappropriate to enforce the operating covenant by way of injunction because it is impractical to do so and, on balance, will result in hardship to Crown and Hess's as well as the other tenants at the Florence Mall that outweighs the benefit to Western & Southern. It is undisputed that Crown is primarily a holding company with no other affiliate capable of operating this store. Crown/Hess's offered unrebutted financial evidence through the testimony of Nicholas Antonazzo and Crown/Hess Ex. 1–3 that Hess's is on the verge of failure and operating under the requirement by its creditors that it "downsize" and eliminate unprofitable stores such as the one at the Florence Mall. Forcing the store to continue operating would impair Crown as well. Additionally, the testimony of plaintiff's expert was that the any of the proposed uses for the site would be better than had Hess's stayed and continued to operate. Furthermore, Western & Southern can be compensated by mon-

ey damages. *See e.g.,* 27 Am.Jur.2d, *Equity* § 107 (1966) ("Judicial discretion ... must guide a court of equity in determining the question whether it should grant or withhold a remedy which is within its power to give.... The consequences of granting relief should be balanced against the need for it. Equitable relief will be denied under certain circumstances where it would impose great hardship upon the defendant or the public while at the same time resulting in little or no benefit to the plaintiff."); *id.* § 115 (where granting the equitable relief requested "appears to be impossible or impracticable, the court may proceed with the case, ... awarding damages or a money judgment in lieu of the desired equitable remedy.").

▆▆▆▆ The law is clear that merely because a covenant is unenforceable in equity does not mean that it is *void* and unenforceable in damages. To the contrary, it is clear under Kentucky law, which follows the approach of the Restatement of Contracts, Second, that financial difficulties without more do not excuse performance in the sense that damages liability is also excused. Nor is a party excused from performance when its own actions renders it incapable of performing.

In this case, Hess's and/or Crown is not excused from its duty of performance of the operating covenant because it decided to close the store for financial reasons, not because it was incapable of maintaining a department store in that location. Indeed, it is downsizing only unprofitable stores. Under such circumstances Crown/Hess's is not excused from its contractual obligations. *See e.g., Elder v. Capps,* 622 S.W.2d 506, 507 (Ky.Ct.App.1981); *see also McGovney & McKee, Inc. v. City of Berea, Ky.,* 448 F.Supp. 1049, 1057 (E.D.Ky.1978), *aff'd,* 627 F.2d 1091 (6th Cir.1980); *Lovejoy v. Reed,* 302 Ky. 153, 193 S.W.2d 1013, 1016 (1946);

*Frazier v. Collins,* 300 Ky. 18, 187 S.W.2d 816, 818 (1945); 17A Am.Jur.2d *Contracts* §§ 666, 669 (1991); Restatement (Second) of Contracts § 261 & cmts. b, d (1981) ("where ... a party's performance is made impracticable without his fault ... his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary"—"The continuation of existing market conditions and of the financial situation of the parties are ordinarily not such assumptions, so that mere market shifts or financial inability do not usually effect discharge under the rule stated in this Section."—"As used here 'fault' may include not only 'willful' wrongs, but such other types of conduct as that amounting to breach of contract or to negligence."); *id.,* § 265 & cmts a, b ("Where, ... a party's principal purpose is substantially frustrated without his fault ... his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary."— "[T]he frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss."—"It applies only when the frustration is without the fault of the party who seeks to take advantage of the rule, and it does not apply if the language or circumstances indicate the contrary.").

Thus, while the court is convinced that an equitable remedy to enforce the operating covenant would be inappropriate in this case, Crown/Hess's is liable in damages for its breach of the operating covenant.

### C. The Restraint on Transfer Clause is not Ambiguous

▆▆▆▆ Section 25.2(a)(1) of the operating agreement is unambiguous. It prohibits transfers to nonaffiliates.[1] Crown/Hess's wish to transfer the property to a nonaffiliate—Federated/Lazarus. At the emergency hearings held prior to the trial in this matter the court announced its tentative conclusion

---

1. The language contained at section 4 of the supplemental agreements pertaining to applicable uses of the property and requiring any transferee to adhere to such restrictions does not render section 25.2 ambiguous. This in no way contradicts the distinct conditions of transfer and ownership set forth in section 25.2. Additionally, there is no ambiguity as to the applicable

"term" of operation imposed upon Hess's, as set forth in section 8.1(a) of the restated operating agreement. Section 8.1(a) explicitly references the "periods of time set forth in separate agreements." In turn, the supplemental agreement imposes the twenty- and thirty-year expiration periods discussed above.

that this section had become unenforceable by reasons of changed circumstances, namely, the near financial failure of Crown/Hess's; Crown/Hess's liability in damages for violation of the operating covenant, which are mounting each day, and the need to mitigate these damages; and the fact that no affiliate exists in the Crown/Hess's corporate family. The court reaffirms this view.

Also, after further consideration, the court also holds that an even more patent reason to hold the restraint void is that the section constitutes an unreasonable restraint on alienation. The policy of the law is that property should be freely alienable and that restraints on alienation are to be strictly construed and invalidated if unreasonable. This provision is very close to being an absolute restraint on alienation and was probably *void ab initio*. *See Godley v. Kentucky Resources Corp.,* 640 F.2d 831, 836 (6th Cir. 1981) (citing *Parrish v. Newbury,* 279 S.W.2d 229, 233 (Ky.1955); *Glenmore Distilleries Co. v. Fiorella,* 273 Ky. 549, 117 S.W.2d 173, 176 (1938)); *Three Rivers Rock Co. v. Reed Crushed Stone,* 530 S.W.2d 202, 205 (Ky. 1975); *Robertson v. Simmons,* 322 S.W.2d 476 (Ky.1959); 61 AM JUR.2D *Perpetuities & Restraints On Alienation* § 111 (1981) (generally, "where a deed ... contains a provision or condition limiting the class of persons to whom the property may be aliened, or excluding a certain person or class of persons from owning such property, such an attempted limitation ... is void"). Even in the case of a "partial restraint," "if the condition unreasonably limits the number or class of persons to whom the property may be aliened, it is invalid." *Gray v. Gray,* 300 Ky. 265, 188 S.W.2d 440, 443 (Ky.1945).

In any event, the court holds that the transfer restriction clause is void under the present circumstances described above because the practical effect of this restraint is to take the real estate out of the ordinary stream of trade or commerce. As admitted by the parties in their closing arguments, the restraint would have the effect of leaving the site "dark." This would cause economic waste contrary to the policy disfavoring restraints on alienation. As such, the restraint is unreasonable for this reason alone. In addition, enforcing the provision would be unreasonable as applied against Hess's given that no affiliate exists. *See Central Bank & Trust Co. v. Kincaid,* 617 S.W.2d 32, 33 (Ky.1981); *Three Rivers,* 530 S.W.2d at 205; *Kentucky–West Virginia Gas Co. v. Martin,* 744 S.W.2d 745, 747 (Ky.Ct.App.1987); *see also* 61 AM JUR.2D *Perpetuities & Restraints On Alienation* §§ 100–1–3 (1981).

◾ Western & Southern argues that the parties have waived their right to object to this provision by securing "consents" to the nonaffiliate transfer from Adcor to Snyder's and by seeking "consents" to this transfer prior to this lawsuit. The court holds that such conduct does not constitute a waiver of the transfer restriction by Crown/Hess's and Lazarus. Nothing in the agreements requires consent, and there is no basis upon which the court can read any such requirement into the contracts. It simply makes better business sense for the parties to get consent and resolve matters extrajudicially, rather than to go to court. Furthermore, the mere acquiescence by plaintiff, on another occasion, in a non-affiliate transfer, does not preclude it from later enforcing the restraint against such transfer against another party. *See Hardesty v. Silver,* 302 S.W.2d 578, 581 (Ky.1957) (and cases cited therein); *see also Francis v. Rios,* 350 F.Supp. 1130, 1132 (D.R.I.1972).

### D. A "Retail Department Store" Requires a Full Line of Departments Under the Agreements

In light of the court's ruling that the restraint on alienation is void, it follows that Crown may convey the Hess's premises to any entity willing to assume Hess's and Crown's obligations under the operating agreements.

The principal duty under the agreements is to operate a "retail department store." The court previously held that this term is ambiguous and required parole evidence to elucidate it. The court has carefully considered the contracts at issue and the parole evidence presented by the parties.

A proper analysis must, of course, begin with the actual documents themselves. Sec-

tion 8 of the supplemental agreement speaks of operating "*a* retail department store" under the Pogue name for twenty years and under any name for an additional ten years. *Plf.Ex. 3, § 8.* All parties seem to agree that the name restriction has become obsolete or unenforceable, but that the retail department store provision remains in effect.

The court rejects the plaintiff's evidence that it was implicit in the contract that there had to be four separate anchors in the Florence Mall. From plaintiff's own evidence it is clear that the parties were prepared to proceed and that the agreements would be binding with only two or three anchors.

■ The developer did, however, tie down this particular parcel with the covenant that a retail department store must be operated on the premises so that it could count on having a retail department store in that location for thirty years. There is nothing unreasonable about this restrictive provision and there are no changed circumstances. As to this parcel the developer is entitled to its bargain, whatever the status or contents of the operating covenants for the other anchors.

■ The court accepts the testimony of Mr. Williams that the term "retail department store" as used by the parties at the time the agreements were entered into contemplated a wide range of departments, including a general line of family apparel, household products, furniture, appliances, electronics, et cetera. Indeed, this conclusion is not really contrary to the defendants' evidence. The court rejects, however, that portion of the defendants' evidence which would qualify the "retail department store" classification with the complex provisions of the Department of Commerce regulation. *Lazarus Ex. 8.* The court holds that such a complex formula was not contemplated at the time the agreements were entered into by the parties. The court accepts the three classifications in the Department of Commerce publication as being generally accepted in the trade, but believes it was the intent of the parties at the time the agreements were made that all three categories be present in more than a nominal manner. The court cannot precisely define exactly what

departments must be present, but suggests that in implementing the agreement the parties replicate as closely as possible the departments used by Hess's before it fell on hard times. In interpreting the provision the court looks at the structure utilized by Hess's to operate a "retail department store" as the starting point. This is based upon the premise that a good way of interpreting a contract is to look at how the parties actually implemented it.

Accordingly, the court being advised, **IT IS ORDERED AS FOLLOWS:**

1. Plaintiff's motion for interlocutory injunctive relief be, and it is, hereby **DENIED;**

2. That the prior preliminary injunction entered by the court on May 21, 1993, (Doc. 10) be, and it is, hereby **DISSOLVED;**

3. That the motion for summary judgment of defendants Hess's and Crown (Docs. 27 & 28) be, and it is, hereby **DENIED;** and,

4. The court's opinion and order on the motion for injunction pending appeal under Federal Rule of Civil Procedure 62 and the Judgment shall enter concurrently herewith.

### OPINION AND ORDER RE: INJUNCTION PENDING APPEAL

■ On June 3, 1993, the court delivered an oral decision regarding permanent injunctive relief. Western & Southern immediately made its motion for an injunction pending appeal asking that the court reinstate its injunction prohibiting the sale of the property from Crown/Hess's to Lazarus. (Doc. ## 64 & 65).

> "When an appeal is taken from an interlocutory or final judgment … dissolving … an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

Fed.R.Civ.P. 62(c). The test for determining whether an injunction pending appeal should issue is the same as that for determining whether a preliminary injunction should issue. *See e.g., Michigan Coalition of Radio-*

*active Material User, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991); 7 JAMES WM. MOORE & JO DESHA LUCAS, MOORE'S FEDERAL PRACTICE ¶ 62.05 (1993). The court must balance the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987).

■ For the reasons stated at the hearing and in the Opinion & Order regarding permanent injunctive relief, incorporated herein by reference, the court finds that the balance of these factors renders an injunction pending appeal inappropriate because Hess's and Crown will be substantially injured if the relief is granted. This factor alone heavily outweighs any other factor and warrants a denial of the motion. Furthermore, the court finds that Western & Southern will not be irreparably injured; the likelihood of success on the merits is not strong; and the public interest lies in favor of the sale going forward.

Briefly, the evidence is unrebutted that the financial condition of Crown and Hess's is precarious and will be further jeopardized should the sale be enjoined. The damages flowing from forcing these companies into bankruptcy cannot be adequately compensated by monetary damages. Western & Southern, on the other hand, will not be irreparably injured if the sale goes forth. Although the transfer restriction is a form of a restrictive covenant and such are traditionally enforced by injunction, here monetary damages will adequately compensate plaintiff. Although the court's original view was that the transfer restriction had become unenforceable due to changed circumstances, after further research the court finds that an even more persuasive reason for the invalidity of the restriction is that it is an unreasonable restraint on alienation. The law on this point is well-established in Kentucky. Also, there is no dispute that the mall will suffer if the site stays vacant and would do better that if Hess's had remained and was fully operational. Even if Lazarus acquires the site, the site must be used as a department store with a full range of departments, which is the use advocated by plaintiff.

Accordingly, **IT IS HEREBY ORDERED** that plaintiff's motion for an injunction pending appeal pursuant to Rule 62(c) (Doc. ## 64, & 65) be, and it is, hereby **DENIED.**

### *JUDGMENT*

Pursuant to the Opinion & Order regarding interlocutory injunctive relief and the Opinion & Order regarding an injunction pending appeal entered concurrently herewith, **IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:**

1. That plaintiff's motion for interlocutory injunctive relief be, and it is, hereby **DENIED;**

2. That the prior preliminary injunction entered by the court on May 21, 1993, (Doc. 10) be, and it is, hereby **DISSOLVED;**

3. That the motion for summary judgment of defendants Hess's and Crown (Docs. 27 & 28) be, and it is, hereby **DENIED;** and

4. That Western & Southern's motion for injunction pending appeal (Doc. # 64 & 65) be, and it is, hereby **DENIED.**